# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TAYLOR NEWMAN CABINETRY, INC.
and  ALLSTAR LIGHTING & SOUND,
INC.,**

**Plaintiffs,**

-vs-                                                        Case No.  6:10-cv-1445-Orl-22DAB

**CLASSIC SOFT TRIM, INC. and  DANIEL
VALENCIA,**

**Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

   This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR REMAND AND ATTORNEY'S FEES (Doc. No. 9)** |
| **FILED:** | **October 4, 2010** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

   Plaintiffs Taylor Newman Cabinetry, Inc., and Allstar Lighting & Sound sued Defendants

Classic Soft Trim, Inc., ("CST") and the CST operations manager, Daniel Valencia, for negligence

arising out of a fire at one of the work stations set up in the adjacent CST warehouse space on August

23, 2009, and filed suit in state court on April 9, 2010.  Doc. 2.  Approximately six months later, on

September 29, 2010, Defendants filed a Notice of Removal, on the basis of putative diversity

jurisdiction and alleging fraudulent joinder of Daniel Valencia, following his testimony at his

deposition that his conduct was not responsible for the fire.  Plaintiffs filed a Motion to Remand on October 4, 2010 and the Court entered an Order to Show Cause to Defendants why the case should not be remanded on October 5, 2010; both identified issues with the diversity jurisdiction alleged as the basis of Defendants' removal of the case.  Docs. 9, 11.  Defendants filed their responses to the Motion and the Order on October 13, 2010 (Docs. 13, 14), and the matter is ripe for decision. Because the Court finds that Florida-resident Daniel Valencia was not fraudulently joined as a Defendant, and, therefore, diversity jurisdiction does not exist, it is respectfully **RECOMMENDED** that the Motion to Remand be **GRANTED**, the case be remanded to the state court from which it was improvidently removed, and Plaintiff be awarded fees for Defendants' improvident removal of the case.

*Standard of Review for Removal of Cases*

Federal court removal is governed by 28 U.S.C. § 1441, which provides in pertinent part that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants to the district court of the United States for the district and division embracing the place where such action is pending."  A defendant desiring to remove a civil action must file a notice of removal, together with all process, pleadings, and orders served upon the defendant in the appropriate United States District Court.  28 U.S.C. § 1446(a).

The federal removal statute sets forth the proper procedure for removal of state actions to federal court and provides in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such

-2-

initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

*Id.* § 1446(b).

The Eleventh Circuit has clarified the requirements of this statutory provision, explaining that "[u]nder the first paragraph of § 1446(b), a case may be removed on the face of the complaint if the plaintiff has alleged facts sufficient to establish the jurisdictional requirements." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1215 n.63 (11th Cir. 2007). The court continued:

Under the second paragraph, a case becomes removable when three conditions are present: there must be (1) an amended pleading, motion, order or other paper, which (2) the defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can first ascertain that federal jurisdiction exists.

*Id.* (citations and quotation marks omitted). Under either paragraph, "the documents received by the defendant must contain an unambiguous statement that clearly establishes federal jurisdiction." *Id.* (citations omitted).

It is well established that removal statutes are to be strictly construed against removal. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1094 (11th Cir. 1994) ("[R]emoval statutes are construed narrowly; when the parties dispute jurisdiction, uncertainties are resolved in favor of remand."). Furthermore, any doubt as to proper subject matter jurisdiction should be resolved against removal. *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir. 1979). The removing party has the burden of proving

that federal jurisdiction exists by a preponderance of the evidence and the removing party must present facts establishing its right to remove. *Williams v. Best Buy Company, Inc.* 269 F.3d 1316, 1319 (11th Cir. 2001). When the defendant fails to do so, the case must be remanded. *Williams*, 269 F.3d at 1321.

*Diversity Jurisdiction*

When diversity of citizenship is the basis for removal jurisdiction, as Defendants allege in this case, then the action must be between "citizens of different States." 28 U.S.C. § 1332(a)[1]. Section 1332 demands complete diversity, such that no plaintiff may be a citizen of the same state as any defendant. *See, e.g., Owen Equip. and Recreation Co. v. Kroger*, 427 U.S. 365, 373, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978); *Florence v. Crescent Resources*, LLC, 484 F.3d 1293, 1297 (11th Cir. 2007) (recognizing "necessary corollary" of diversity jurisdiction that "complete diversity of citizenship" is required); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1198 n. 31 (11th Cir. 2007) ("Section 1332(a)'s diversity requirement has been interpreted to require complete diversity among the parties."); *Legg v. Wyeth*, 428 F.3d 1317, 1320 n. 2 (11th Cir. 2005) ( "Federal diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity – the citizenship of every plaintiff must be diverse from the citizenship of every defendant.").

For diversity purposes, a corporation is a citizen of (1) its state of incorporation; and (2) the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Although a company may conduct business in multiple places, the Supreme Court has recently determined that "principal place of business" for a corporation is its nerve center: "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, __ U.S. __, 130 S.Ct.

---

[1]There is no dispute that the amount in controversy requirement has been met.  Doc. 9 at 5 n.3.

1181, 1192- 93, __ L.Ed.2d __ (2010) (establishing "nerve center" test as uniform approach for determining corporate citizenship).

Defendants' Notice removing the case was on its face defective as to CST – it stated that Plaintiffs are citizens of Florida, and Defendant CST is a Texas corporation, but failed to state CST's principal place of business. *See* Doc. 11. In response to an order to show cause, CST has now corrected this defect, stating that its principal place of business is Texas. Doc. 13. For diversity purposes, therefore, Defendant CST is a citizen of Texas, and diverse from Plaintiffs. However, Defendant Daniel Valencia is a citizen of Florida, which would destroy diversity and render the Court without jurisdiction over Plaintiffs' claims[2]. *See, e.g., Florence v. Crescent Resources*, *LLC,* 484 F.3d 1293, 1299 (11th Cir. 2007) (where defendant was a citizen of Florida, complete diversity did not exist; district court lacked subject matter jurisdiction to adjudicate the cases and remand should have been granted). However, Defendants in their Notice, and in the Response to the Motion to Remand (Doc. 14), argue that Valencia was fraudulently joined for the sole purpose of defeating diversity jurisdiction and thwarting removal of the case. The Court now turns to the issue of fraudulent joinder.

*Fraudulent Joinder*

To support their argument for diversity jurisdiction and proper removal of this action, Defendants contend that Daniel Valencia, the resident Defendant, was fraudulently joined to defeat diversity jurisdiction. Docs. 1, 14. Plaintiffs move to remand, arguing that they have asserted a colorable theory of negligence against Defendant Valencia and Defendants have not shown by "clear

---

[2]The case would also not be removable because Defendant Valencia (as long as he is not fraudulently joined) cannot remove the action from Florida state court since he is a Florida citizen. Under the removal statute, cases not alleging federal question jurisdiction are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

and convincing evidence" that "no possibility exists that Plaintiffs can establish a cause of action against the resident Defendant."

As explained by the Eleventh Circuit, "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). The plaintiff's inclusion of a non-diverse defendant in this manner is referred to as "fraudulent joinder" and does not defeat removal diversity jurisdiction. *Id*. Instead, "the federal court must dismiss the non-diverse defendant and deny any motion to remand." *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007) (citing *Henderson*, 454 F.3d at 1281).

The doctrine of fraudulent joinder provides for an exception to the citizenship requirements of removal jurisdiction. In the Eleventh Circuit, joinder has been deemed fraudulent in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) where a resident shares no joint, several, or alternative liability with the nonresident defendants and the claim against the resident defendant has no real connection to the claims against the nonresident defendants. *Tran v. Waste Management, Inc.,* 290 F.Supp.2d 1286, 1292 (M.D. Fla. 2003) (citing *Triggs v. John Crump Toyota, Inc*., 154 F.3d 1284, 1287 (11th Cir. 1998)). In this case, Defendants argue that there is "no possibility" that Plaintiff can assert a colorable claim. "The defendant must make such a showing by clear and convincing evidence." *Henderson*, 454 F.3d at 1281 (citing *Parks v. N.Y. Times Co*., 308 F.2d 474, 478 (5th Cir. 1962)).

In determining whether a defendant is fraudulently joined,[3] the court utilizes a procedure similar to that used in deciding motions for summary judgment. *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997).  First, "the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Id.* at 1538 (citing *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981)); *see also Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989) ("In addressing the issue of fraudulent joinder, the district court should resolve all questions of fact and controlling law in favor of the plaintiff").  "The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties." *Crowe*, 113 F.3d at 1542 (citing *B, Inc.*, 113 F.3d at 549).  The court resolves all questions of fact in favor of the plaintiff. *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) (quoting *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)).  Next, the court must determine whether, based on its review of the materials described above, the plaintiff's claim "is an arguable one under state law." *Crowe*, 113 F.3d at 1538 (citing *B, Inc.*, 663 F.2d at 548-59). This substantive part of the analysis is distinct from the standard used to evaluate motions for summary judgment. As the Eleventh Circuit explained:

> In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be a reasonable basis for predicting that the state law might impose liability on the facts

---

[3]Defendants allege fraudulent joinder of Daniel Valencia under the "no possibility" theory . *See* Doc. 1 at 5.  Thus, analysis will be limited to the law related to the first type of fraudulent joinder.

> involved. Because the procedures are similar while the substantive standards are very
> different, district courts must exercise extraordinary care to avoid jumbling up motions
> for remand and motions for summary judgment that come before them.

*Id.* at 1541-42 (citations omitted). Thus, when considering a motion to remand where a defendant has raised the issue of fraudulent joinder, "the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." *Id.* at 1542. "[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Florence*, 484 F.3d at 1299 (citations omitted); *Tran v. Waste Management, Inc.,* 290 F.Supp.2d 1286, 1292 (M.D. Fla. 2003). "The plaintiff need not have winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Tran*, 290 F.Supp.2d at 1292.

Defendants' burden to demonstrate fraudulent joinder is a "heavy one," *Crowe*, 113 F.3d at 1538 (quoting *B, Inc.*, 663 F.2d at 549), but not insurmountable. As the Eleventh Circuit explained in *Legg*, "[t]he potential for legal liability 'must be reasonable, not merely theoretical.'" *Legg*, 428 F.3d at 1325 n.5 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). The court continued, "In considering possible state law claims, possible must mean 'more than such a possibility that a designated resident can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.'" *Id.* (quoting *Braden v. Wyeth*, No. CV-04-PT-235-E, 2004 WL 3569804, at *1 (N.D. Ala. June 30, 2004)).

As explained above, the substance of the fraudulent joinder analysis (that is, whether the plaintiff has made a colorable claim against the resident defendant) is provided by state law.[4]  In this case, Plaintiffs assert negligence claims against both Defendants, alleging negligence against CST, and a corresponding claim for negligence against its employee, Daniel Valencia.  Doc 2.  Both negligence claims arise out of a fire that occurred at CST's place of business on August 23, 2009 ("the subject fire").  Doc. 2.  The two Plaintiffs and CST were common tenants at 754 Fleet Financial Court in Longwood, Florida, and all three companies shared building space at that location.  Doc. 2.  As a result of the subject fire that originated in CST's shop, both Plaintiffs sustained extensive damage to their respective shops, and their normal, day-to-day business operations were significantly interrupted which caused further losses.  Doc. 2.

Plaintiffs argue that this is a "simple and straightforward" negligence action which, although stated in two separate claims for negligence against employer and employee, is a "classic case of joint and several" liability arising from the same operative facts and acts of negligence leading to the subject fire. Under Florida law, an employer is liable in damages for the wrongful act of his employee that causes injury to another person, "if the wrongful act is done while the employee is acting within the apparent scope of his authority as such employee to serve the interests of the employer, . . . unless the wrongful act of  the employee was done to accomplish his own purposes, and not to serve the interests of the employer."  *Gowan v. Bay County*, 744 So.2d 1136 (Fla. 1st DCA 1999) (quoting *Stinson v. Prevatt*, 94 So. 656, 657 (1922)); *Lowe v. Entcom, Inc.* 2005 WL 1667681 (M.D. Fla. July 14, 2005) (plaintiff adequately stated a cause fo action for negligence against employer-defendant).

---

[4]In determining the issue of fraudulent joinder, the Court must resolve all contested issues of fact and draw all reasonable inferences from the record in favor of Plaintiffs.  *See Crowe*, 113 F.3d at 1541-42.

Defendants respond that Plaintiffs' two claims are "functionally and virtually identical . . . clones of each other" and Plaintiffs' Complaint fails to "expressly allege that Daniel Valencia 'personally participated' in the tort" or "set forth any ultimate facts as required under Florida law to support such an allegation."  Doc. 14.  Plaintiffs allege that Defendant Valencia, as Operations Manager for CST (since 2005) "personally participated" when acting in the course of his employment at all times material to claims alleged, as he was responsible for ensuring that CST's shop policies and procedures were followed, including:  i) overseeing the employee safety meetings that were conducted each month; ii) making sure that the shop's daily shut-down procedures were followed and fully executed each day; iii) making sure that all electrical tools, equipment and appliances had been "disconnected" at the end of each day, and; iv) making sure that any hazardous or flammable materials that may have been used at the employees' workstations had been returned to the shop's "fire cabinet." Doc. 2.

Plaintiffs' theory of the case is that negligent acts or omissions of CST's employees – including, specifically, Daniel Valencia – caused the fire that resulted in significant damages to their respective businesses; they allege that the subject fire was caused because one of CST's numerous electrical tools or appliances had not been disconnected (in derogation of the shop's shut-down procedures) which overloaded an electrical circuit and this overloaded circuit resulted in an arcing event that ignited nearby flammable substances that had not been returned to the shop's fire cabinet (in derogation of the shop's shut-down procedures).  Alternatively, Plaintiffs allege that CST and its employees, including its Operations Manager Valencia, were negligent in performing certain modifications to the electrical wiring in the shop creating a hazardous condition that caused or contributed to the subject fire.  Plaintiffs included CST as an additional defendant, to the extent that

-10-

CST is considered jointly and severally liable for any negligent acts committed by its employees during the scope and course of their employment.

Defendants argue that under Florida law, Plaintiffs' Complaint fails to state a claim or cause of action against Valencia[5] for negligence because they cannot show that Daniel Valencia "personally participated in the tort" thus, "no possibility exists that Plaintiffs can establish a cause of action against the resident Defendant." Doc. 14 at 3 (*Vesta Construction & Design, LLC v. Lotspeich & Associates, Inc.,* 974 So.2d 1176, 1180 (Fla. 4th DCA 2008). The case Defendants cite, *Vesta Construction,* is inapposite in that the appellate court held that the plaintiff could not circumvent the economic loss rule barring recovery for tort claims where a contract between the parties existed by suing the corporate employees for their negligent performance of the contract. *Id.* The *Vesta* decision actually supports *Plaintiffs'* position in that the Court noted that "officers or agents of corporations may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope of their employment. All that needs to be alleged is that the agent or officer personally participated in the tort, even if the complained of action was because of and entirely within the scope of his or her employment." *Id.* (citing *White v. Wal-Mart Stores, Inc.*, 918 So.2d 357, 358 (Fla. 1st DCA 2005). Defendants argue that Plaintiffs' Complaint does not expressly allege that Daniel Valencia "personally participated" in the negligence alleged.[6] However, Plaintiffs do allege that but for the preceding negligent acts or omissions of Valencia in shutting down the CST shop, the subject fire would not

---

[5]Plaintiffs' Complaint apparently withstood a motion to dismiss or motion for more definite statement in state court, although the basis for the motion or the response is not presented to the Court on this record.

[6]"Defendants also argue that Plaintiffs' Complaint fails to "set forth any ultimate facts, as required under *Florida law* to support such an allegation" and cites Florida Rule of Civil Procedure, which of course does not govern the proceedings in this *federal* court where the Federal Rules of Civil Procedure and modified notice pleading apply. Doc. 14 at 3.

-11-

have occurred, which raises a colorable claim for negligence against Valencia and is sufficient at this stage in the litigation.

In the case of *Augustine v. Target Corp.*, 259 F. Supp.2d 919 (E.D. Mo. 2003), a Missouri plaintiff, alleging injuries from a slip and fall, sued a non-resident store, and the resident store manager for negligence under Missouri law. *Id.* at 922. The court held that joinder of the resident defendant was not fraudulent where the plaintiff alleged that the store manager was responsible for maintaining parking lot, that he knew or should have known of dangerous sewer grate where accident occurred, and that he had negligently failed to repair it or warn customers of danger. *Id. See also Tran v. Waste Management, Inc.*, 290 F. Supp.2d 1286, 1294 (M.D. Fla. 2003) (Conway, C.J.) (holding that the gross negligence claims brought against the diverse employer and the resident employee were not so obviously frivolous to be considered fraudulent, thus, the case could not be removed on diversity grounds).

Defendants also argue that Plaintiffs' assertion of two separate claims against Valencia and CST is an "unnecessary redundancy" for the same occurrence and pleading a single claim for vicarious liability would "obviate the need for pressing a claim directly against an employee." Doc. 14 at 4. There is nothing improper about Plaintiffs' assertion of a direct negligence claim against an employee of CST *and* a claim for vicarious liability against the employer - the two are not mutually exclusive. *See, e.g., Prager v. FMS Bonds, Inc.*, Case No. 09-80775-Civ, 2010 WL 2950065, 9 (S.D. Fla. July 26, 2010) (noting that the amended complaint contained a single state law negligence claim directed at an individual employee of company, as well as a claim for vicarious liability against that employer).

The Eleventh Circuit, in considering the difference between negligence and vicarious liability, has described Florida law as providing that negligence occurs when a person, by some act or omission, "fail[s] to use reasonable care," but:

> [I]n contrast, vicarious liability involves "[t]he imposition of liability on one person for the actionable conduct of another, based solely on a relationship between the two persons." Blacks Law Dictionary 1566 (6th ed. 1990). In other words, a person is held negligent based on his or her own failure to exercise reasonable care, but a person is held vicariously liable based on another's failure to exercise reasonable care. It follows that the words "negligent" and "vicarious liability" are not interchangeable because, in terms of liability, the latter is a more expansive concept than the former.

*National R.R. Passenger Corp. v. Rountree Transport and Rigging, Inc.*, 286 F.3d 1233, 1262-63 (11th Cir. 2002) (quoting *Moransais v. Heathman,* 744 So.2d 973, 976 n. 4 (Fla. 1999)).

Plaintiffs have chosen to pursue direct negligence claims against Defendants Valencia and CST; Plaintiffs are the masters of their Complaint – it is not left to Defendants to decide how Plaintiffs' claims should be pled.  "In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties."  16 J. Moore et al., Moore's Federal Practice § 107.14[2][c] at 107-67 (3d ed. 2005); *Lincoln Property Co. v. Roche*, 546 U.S. 81, 91, 126 S.Ct. 606, 614 (U.S. 2005) (citing *Moore*) (joinder rule did not require  plaintiffs to join additional parties under facts of case).  *See also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The [well-pleaded-complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.").

Defendants basically argue that the claim against Valencia is not viable because Valencia testified to the effect that:

> [H]e was working as an employee of the co-defendant, CST, during the time relevant to the allegation in the Complaint; he followed the directions of his employer in

-13-

providing safety instruction and information to his fellow employees and in following the company's shut-down procedures; the electrical systems and appliances had been shut down, turned off or unplugged when he and the other employees left the facility on the Friday, August 21, 2010, before the Sunday August 23, 2009 fire; none of the electrical appliances had previously arced or faulted; neither he nor CST ever worked on or modified the building's electrical systems; only the landlord - who also had a key to CST's tenant space - and/or its handyman electrician worked on the building electrical systems; the 754 building had a history of electrical problems and power failures that also involved the Plaintiffs' part of the same building; the landlord/owner and its handyman electrician were well aware of the ongoing electrical failures and problems, overheating electrical conduits, and tripping main circuit breakers in the building's electrical system before the alleged incident; and, the landlord/owner and its handyman electrician had been in the process of working on the building's electrical system during the two weeks leading up to alleged fire incident.

Doc. 14 (citing Daniel Valencia Depo.).   Applied to this case, whether Valencia properly did his job, followed safety procedure, and/or other of his actions contributed to the fire depends completely on the credibility of his testimony.

As the Eighth Circuit explained seventy-five years ago in *Leonard v. St. Joseph Lead Company*:

> [J]oinder is also fraudulent if the facts alleged in plaintiff's pleading with reference to the resident defendant are shown to be so clearly false as to demonstrate that no factual basis exists for an honest belief on the part of the plaintiff that there is a joint liability. If there is doubt as to whether, under the state law, a case of joint liability is stated, or if there is doubt whether the allegations with respect to the resident defendant are false, *as when that question depends upon the credibility of witnesses and the weight of evidence, the joinder is not to be held fraudulent.* Where the concurrent negligence of a nonresident and a resident defendant is the basis of the claim of joint liability, the case is ordinarily not removable.

75 F.2d 390, 394-95 (8th Cir. 1935) (emphasis added).  Doubt as to the allegations with respect to the resident defendant exists "when that question depends upon" the weight of the evidence and the credibility of witnesses – in this case, the self-serving testimony of Defendant Valencia that he handled all procedures properly and did nothing to contribute the fire, which he also testified could be related to the landlord's actions/inaction.  Plaintiff has stated a colorable claim for negligence

-14-

against Defendant Valencia, a resident defendant, and as such the Court lacks diversity jurisdiction over the case.

Defendants' other argument, that Plaintiffs have waived their ability to move for remand – even though it is within the thirty day window allowed by statute and is for lack of subject matter jurisdiction, *see* 28 U.S.C. § 1447(c)[7] – is unpersuasive.  Defendants argue that  Plaintiffs "have offensively participated in discovery" in federal court since filing the Motion to Remand and thus have waived their ability to move for remand, citing cases from the 1980's.  Doc. 14 at 2.  In the first case cited by Defendants, *Getty Oil Corp. V. Insurance Company of North America*, 841 F.2d 1254, 1264 (5th Cir. 1988), the Fifth Circuit actually vacated the judgment and remanded the case to the district court to determine if the parties were diverse and whether it had jurisdiction; it left to the district court the decision whether there had been waiver by virtue of the plaintiff filing a motion for reconsideration after removal.  In this case, Plaintiff has not sought relief of any sort from the court (beyond remand), but has merely participated in discovery in this case (which is already far along), and has merely responded to court administrative orders such as the certificate of interested persons and notice of pendency of related cases.

The other case cited by Defendants, *Harris v. Edward Hyman Co.*, 664 F.2d 943, 945-46 (5th Cir. 1981), is completely inapposite since the court held that the plaintiff waived her ability to move for remand by delaying more than thirty days before seeking remand.  Here, Plaintiffs immediately moved to remand the case within five days of Defendants' removal and no waiver applies.

Defendants' citation to the recent Eleventh Circuit case as supplemental support of their position (Doc. 17) is misplaced, since that case was decided on the basis of a *procedural*, rather than

---

[7]A motion to remand the case on the basis of any defect *other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a).  28 U.S.C § 1447(c) (emphasis added)..

a jurisdictional defect in the district court's subject matter jurisdiction.  In *Moore v. North American Sports, Inc.*, __ F.3d __, 2010 WL 4054415 (11th Cir. Oct. 18, 2010), the Eleventh Circuit rejected the plaintiff's argument that the defendants' belated filing the notice of removal required vacation of the jury verdict in defendant's favor.  Instead, the court held that "[a]ny untimeliness in the filing of the notice of removal in this case would be an insufficient bases to vacate the judgment and remand for a new trial in state court.  It is undisputed in this case that the timeliness of removal is a procedural defect – not a jurisdictional one."  *Id.* at *3.  Here, Plaintiffs raise a jurisdictional defect – lack of diversity of the parties – which can never be waived and, in fact, can be raised by the court *sua sponte*, even on appeal.  *See, e.g., Fitzgerald v. Seaboard System R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir.1985) (appellate court can conduct plenary review of subject matter jurisdiction *sua sponte* and indeed has obligation to inquire into subject matter jurisdiction whenever it may be lacking); *Masters v. Harkleroad*, 303 Fed. App. 859 (11th Cir. 2008) (same).  Further, the issue in *Moore* was whether a denial of remand on non-jurisdictional grounds was subject to appellate review after trial on the merits.  The court did not address the correctness of the district court's decision not to remand.

  *Fees*

Plaintiffs seek attorney's fees and costs pursuant to 28 U.S.C. § 1447(c) on the grounds that Defendants' removal of the case was "patently improper and without any legal support whatsoever" because the two negligence claims in Plaintiffs' Complaint are joint and several and arise out of the same set of operative facts relating to the fire.  Doc. 9.  That provision provides, in pertinent part, that an order remanding a case to the state court "may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "Whether to award fees and costs under this section is within the Court's sole discretion."  *Tran*,, 290

-16-

F.Supp.2d 1286, 1296; *Smith v. Health Ctr. of Lake City, Inc.*, 252 F.Supp.2d 1336, 1346 (M.D. Fla.2003); *see also Martin v. Mentor Corp.*, 142 F.Supp.2d 1346, 1349 (M.D. Fla.2001) ("The award of attorney's fees and costs under this section is discretionary with the trial court"); *Liebig v. DeJoy*, 814 F.Supp. 1074, 1077 (M.D. Fla.1993) ("The award of attorney's fees and costs under this section is completely discretionary with the trial court"). In the Middle District of Florida, where subject matter jurisdiction is lacking "a showing of bad faith is not necessary as a predicate to the award of attorney's fees [under 28 U.S.C. § 1447(c) ]." *Martin*, 142 F.Supp.2d at 1349; *Butterworth*, 1997 WL 1068628 at *4 ("A plaintiff is not required to show bad faith on the part of a defendant in filing for removal to obtain an award of fees"); *Liebig*, 814 F.Supp. at 1077 ("a showing of bad faith is no longer necessary as a predicate to the award of attorney's fees"). Rather, the "intent of the statute is to reimburse plaintiffs who have incurred expenses in attacking improper removals." *Butterworth*, 1997 WL 1068628 at *4; *Liebig*, 814 F.Supp. at 1077.

In this case, Defendants filed their Notice of Removal following Valencia's deposition – which they contend was their *first* notice of Defendant Valencia's self-serving testimony – that he denied responsibility for any role in the fire. For the reasons explained above, the Notice was improper because the Court lacks subject matter jurisdiction. *See Liebig*, 814 F.Supp. at 1077 (noting that Notice of Removal is improper where a federal court lacks subject matter jurisdiction). Particularly in light of Judge Conway's precedential opinion in *Tran v. Waste Management, Inc.*, 290 F.Supp.2d 1286 (M.D. Fla. 2003), a case very much on point, and other Middle District cases cited herein, Defendants' Notice of Removal was patently improper. In addition, considering the facts presented in the case, the presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand, and Eleventh Circuit precedent providing

-17-

Case 6:10-cv-01445-ACC-DAB   Document 24   Filed 11/03/10   Page 18 of 18 PageID 696

that in the remand context "the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims," Defendants' removal was improper. *See Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001); *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997).

Accordingly, the Court finds that Plaintiffs are entitled to recover from Defendants attorney's fees of $2500.00,[8] incurred as a result of the removal. *See Liebig*, 814 F.Supp. at 1077 (awarding just costs, actual expenses and attorney fees where subject matter jurisdiction was lacking); *see also Butterworth*, 1997 WL 1068628 at *4 (awarding just costs, actual expenses, and attorney fees where subject matter was lacking); *Publix Supermarkets, Inc. v. United Food & Commercial Workers Int'l Union*, 900 F.Supp. 419, 422 (M.D. Fla.1995) ("Although Defendant may have acted in good faith in filing the Notice of Removal, the Court has already determined that removal was improper because federal subject matter jurisdiction is patently lacking. Therefore, as a matter of fairness, Plaintiff is entitled to recover from the Defendants the actual amount of the expenses incurred as a result of the improper removal of this action").

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 3, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[8]This figure is selected as a fair measure of recompense to avoid the need for further submissions by the parties to establish a more precise amount, the cost of which would likely exceed any benefit to be achieved.

-18-