**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TAYLOR NEWMAN CABINETRY, INC.**
**and ALLSTAR LIGHTING & SOUND,**
**INC.,**

                  **Plaintiffs,**

**-vs-**                                          **Case No. 6:10-cv-1445-Orl-22DAB**

**CLASSIC SOFT TRIM, INC. and DANIEL**
**VALENCIA,**

                  **Defendants.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

       This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION FOR WRIT OF EXECUTION, AND MOTION TO ENFORCE FINAL ORDERS REGARDING ATTORNEYS' FEE AWARDS (Doc. No. 44)** |
| **FILED:** | May 9, 2012 |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**. | |
| **MOTION:** | **MOTION FOR RELIEF FROM JUDGMENT AWARDING ATTORNEY'S FEES (Doc. No. 53)** |
| **FILED:** | June 27, 2012 |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED**. | |

The claims in this case arise from a fire that took place in a commercial building on August 23, 2009. Plaintiffs, who are Florida corporations and were tenants in the building, sued another one of the tenants in the building, a Texas corporation, as well as one of the supervisory employees of the corporation, a Florida resident. Defendant corporation removed the case to this Court on the basis of diversity jurisdiction, arguing that the Florida employee had been fraudulently joined and his citizenship should be ignored for purposes of determining subject matter jurisdiction. The Court did not agree. Following Defendants' improvident removal of the case to this Court nearly two years ago, the Court ordered the case remanded to state court. The Court also ordered Defendants to pay attorney's fees of $2,500 to Plaintiff and directed Defendants to pay that fee award by December 24, 2010. Doc. 29. The award apparently remains unpaid. Earlier this year, on February 29, 2012, Defendants lost their appeal of the attorney's fee award in the Eleventh Circuit and a supplemental award of attorney's fees of $16,992 was awarded against Defendants. Doc. 43.

Because Defendants have refused to pay either award of fees, Plaintiffs seek to have the attorney's fee awards satisfied by writ of execution. Defendants do not assert any particular argument specifically against letting the writ of execution issue, but instead contend that the Court should vacate the fee awards, pointing to alleged "fraud" in developments as they took place in the state court case (Doc. 53) – all of which is outside the narrow facts supporting remand of the case and award of fees ordered by this Court on November 29, 2010. Doc. 29.

Defendants' Motion for Relief from Judgment (Doc. 53), if granted, would moot the relief sought in Plaintiffs' Motion for a writ of execution. Doc. 45. Thus, the Court addresses Defendants' Motion for Relief from Judgment first, recommending that the Motion should be denied, and then addresses the Motion for Writ of Execution, recommending that the District Judge enter a judgment on the fee awards to allow a writ of execution to issue.

## ANALYSIS

**1. Motion for Relief from Judgment under Rule 60**

. Defendants contend that, on March 6, 2012, in state court, Mr. Main and his firm were forced to withdraw as counsel for Plaintiffs, allegedly due to their conflict of interest in having also represented Fleet Financial, the owner of the building where the fire occurred, and its sole shareholder, Michael F. Towers.[1] Defendants now seek relief under Federal Rule of Civil Procedure 60(b)(3) and (b)(6) from the attorneys' fees awards entered connected to the remand[2] based on the alleged fraud of Plaintiffs' counsel[3], Mr. Main, and his law firm in failing to disclose to the Court and Defendants that they had previously represented the building's owner, Fleet Financial, and its sole shareholder, Michael F. Towers, which led to "improper steps they took to protect Towers/Fleet from being the only defendant in Plaintiffs' state court lawsuit against Defendants." Doc. 53. Defendants alternatively seek to have Plaintiffs' counsel and his law firm, as well as Plaintiffs, sanctioned under the Court's inherent authority for Plaintiffs and Plaintiff's counsel's alleged "misrepresentations, misconduct, abuse of process and fraud on the court."[4]

Defendants allege: "Simply put, to Classic, this case looks like and smells like a fraudulent fire claim perpetuated for the benefit of Michael F. Towers and Fleet Financial by Steven R. Main, Esq. and his firm, former counsel for the Plaintiffs." Doc. 53 at 14. Defendants argue that, based on

---

[1] Mr. Towers, allegedly a.k.a. Michael F. Tiemeyer, was apparently accused of fraud in Case No. 6:95-cv-930-ACC and Case No. 6:98-cv-1267-ACC. Defendants also contend that Michael F. Towers is the alias of a convicted felon.

[2] Pursuant to 28 U.S.C. § 1447(c).

[3] Although Defendants mention lack of fair dealing, abuse of process, failure to apprise the Court of authority directly contrary to their requested relief, and "willful blindness to the truth," (Doc. 53 at 1), they either do not argue the specific facts which would give rise to any relief under these theories or do not argue them at all. Doc. 53 at 21-26.

[4] To the extent Defendants move for an Order requiring Mr. Main and his firm to establish that they presently represent Plaintiffs in this litigation, no such relief will be granted. Mr. Main is bound in his representation of Plaintiffs, or any client, by the Rules Regulating the Florida Bar.

the previous representation Plaintiff's counsel, they "knew" that the owner of the building was strictly liable for the fire[5] or could have deduced that from the principal's alleged criminal history; therefore, Plaintiffs must have fraudulently joined the Defendant-employee Daniel Valencia to avoid federal diversity jurisdiction and to keep the case in state court. Doc. 53 at 2-3.

Plaintiffs' counsel argues that Defendants' latest Motion is just another example of "their misplaced insistence at trying the merits of the underlying negligence claims in this federal forum." Plaintiffs argue that Defendants are incorrect in arguing that the owner of the building should have been initially named as a defendant in this action, and that Plaintiffs' failure to do so is evidence of a "fraud on the court," because even if Plaintiffs had named the building's corporate owner or its principal as defendants, they are a Florida corporation and resident, which would have destroyed diversity of citizenship, and there would have been no basis to support a removal in the first place[6]. Plaintiff also objects to Defendants' "offensive, unprofessional and misplaced assertion that Plaintiffs or their counsel deliberately and fraudulently withheld information regarding past lawsuits" involving Towers/Fleet or any code violations because these were matters of public record, and none of these matters are relevant to whether Defendants lacked an objectively reasonable basis in attempting to remove the case to federal court.

For the reasons set forth below, it is respectfully **RECOMMENDED** that Defendants' Motion for Relief from Judgment on the Attorney's Fee Award be **DENIED.**

*Standard for Relief from Judgment Pursuant to Rule 60*

---

[5] Defendants contend that the building owner was strictly liable because the corporation and its principal allegedly did not obtain a building permit or certificate of occupancy. Doc. 53.

[6] The landlord and the principal, as a Florida corporation and resident, also could not have removed the case in contravention of 28 U.S.C. § 1441(b) (diversity cases are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."). Thus, the case would not have been removable for this reason as well.

-4-

Under Federal Rule of Civil Procedure 60(b), the court may relieve a party from a final judgment or order for "(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct, by an opposing party;" or "(6) any other reason that justifies relief" from the operation of the judgment or order not set out in Rules 60(b)(1) through (5). Fed.R.Civ.P. 60(b). To obtain relief from a final judgment or order based upon fraud under Rule 60(b)(3), the moving party must prove by clear and convincing evidence that the adverse party obtained the verdict through fraud, misrepresentations, or other misconduct. *Waddell v. Hendry County Sheriff's Office,* 329 F.3d 1300, 1309 (11th Cir. 2003) (citing *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1287 (11th Cir. 2000). The moving party must also demonstrate that the conduct prevented the party from fully presenting its case. *Id.* (citing *Frederick,* 205 F.3d at 1287). Rule 60(b)(3) relief should only be granted in situations involving "the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated." *Johnson v. Law Offices of Marshall C. Watson, P.A.*, 348 F. App'x 447, 448 (11th Cir. 2009). The movant must prove the existence of "an unconscionable plan designed to improperly influence the court in its decision." *Id.*

To obtain relief from a final judgment based the "catch-all" provision in Rule 60(b)(6), the movant must show "extraordinary circumstances." *Ackermann v. United States*, 340 U.S. 193, 202 (1950) (holding that relief under Rule 60(b)(6) is an extraordinary remedy that may be invoked only upon a showing of extraordinary circumstances); *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001) ("[R]elief under this clause is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances."); *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000) ("A Rule 60(b)(6) motion . . . is intended only for extraordinary circumstances"). While Rule 60(b)(6) "should be construed in order to do substantial justice, . . . this

does not mean that final judgments should be lightly reopened." *See, e.g., Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 679-80 (11th Cir. 1984) ("The desirability for order and predictability in the judicial process speaks for caution in the reopening of judgments."). "Finality is a virtue in the law." *Waddell*, 329 F.3d at 1309 n. 11 (quoting S.S. PELOUBET, A COLLECTION OF LEGAL MAXIMS IN LAW AND EQUITY 77 (1985) ("*Expedit reipublicæ ut sit finus litium*: It is for the public good that there be an end of litigation.")). Even if the movant can show extraordinary circumstances, whether to grant the requested relief is a "matter for the district court's sound discretion." *Toole*, 235 F.3d at 1316.

*Argument*

Defendants argue that Plaintiff's counsel engaged in "subversion and obstruction of discovery" and "disingenuously and dishonestly" alleged that the cause of the fire was from an electrical appliance that had been left plugged in, which overloaded an electrical circuit and resulted in an arcing event that ignited nearby flammable substances not properly stored by Defendant CST and its employees. Doc. 53 at 14-15.

Defendants argue that Plaintiffs' pleadings failed to meet the standards for *Florida* procedural rules which require fact pleading – not notice pleading. Defendants argue, based on a fire investigation expert's subsequent report and deposition testimony (in April 2011) in *state court* discovery, that no plugged-in electrical appliances were "observable." Defendants also argue that Plaintiffs' counsel "already had to know" that the building owner was strictly liable and Defendant-employee Valencia "had nothing to do with the damages claimed by Plaintiffs," but through Plaintiffs' counsel's "willful blindness," denied the Defendants' contention that the building's owner was responsible for code violations and strictly liable for the fire. Doc. 53 at 15.

Defendants allege that Plaintiffs' counsel "could have easily ascertained that through the county building department website that the owner never obtained the appropriate permits, and, based

on the languages in the leases [with tenants], they were not allowed to make changes to the building." Therefore, Defendants argue, Plaintiff's counsel and his firm committed fraud and attorney misconduct when they filed Plaintiffs' Motion to Remand, "purportedly on behalf of Plaintiffs, with whom he and his firm had a direct conflict of interest; yet failed to advise this Court" of that conflict; it was also fraud, Defendants argue, when Plaintiffs named the employee, Valencia, even though "they knew that the cause of this fire and the ensuing damages were unrelated to Valencia because the only responsible and liable party was the owner of the illegal building where the fire happened." Doc. 53 at 20. Defendants further argue, "under these circumstances [Defendant] submits it had reasonable justification to remove this matter to federal court" and that Plaintiffs' counsel "unquestionably knew that removal was reasonable and appropriate, but willfully and wrongfully resisted removal by and through a pattern of hiding evidence, hiding conflicts of interests, fraud on the court and intentionally ignoring what was to be seen and found simply to avoid being conflicted out of this case and having to advise his clients of the fault of Plaintiff counsel's other client, Michael F. Towers and Fleet and of his knowledge of Towers and Fleet's knowing fraud and RICO violations." Doc. 53 at 19.

Plaintiffs respond that, aside from the fact that Defendants' Motion is replete with false accusations and offensive attacks on the counsel's ethics, it is devoid of cogent argument or clear and convincing evidence that establishes the previous rulings by this Court and the Eleventh Circuit were fraudulently induced." Doc. 54 at 2. Plaintiffs point to the written reports generated by the numerous investigators who had an opportunity to inspect the scene in the days immediately following the fire, none of whom concluded that the landlord had any culpability whatsoever with respect to the cause of the subject fire; all of the written reports that were obtained by Plaintiffs from the multiple experts who were on-site to conduct a "cause and origin" investigation in the days immediately following the subject fire point to the negligence of Defendants, and only Defendants. Doc. 54 at 7-10 (citing

excerpts from several expert reports (including the fire marshal) indicating the fire began accidentally from electrical arcing or an overloaded electrical cord from an electrical appliance at a workbench in the Defendants' work space and spread quickly, igniting combustible materials). Plaintiffs contend that none of the on-site investigators whose reports were obtained by them prior to filing suit had opined that the landlord had any culpability with respect to the subject fire, or that the building itself, was connected in any way to the fire's cause and origin. Subsequently, the building owner was added as a defendant in the state court case, once Plaintiffs learned that the area where the fire started did not have a fire suppression system and may have contributed to the spread of the fire; whether the area was required to be equipped with a fire suppression system remains a disputed issue. Doc. 54 at 14-15. Once the building's owner was named as a defendant in the state court, Plaintiffs' counsel withdrew to avoid the appearance of a conflict.[7] Doc. 54 at 15.

Plaintiffs also respond that they (or their counsel) were never asked to provide any of the information Defendants now argue was deliberately and fraudulently withheld; Plaintiffs contend that the information regarding the building and whether it fully complied with building and safety codes as well as the litigation history of Michael Towers are all matters of public record; and none of these matters have any relevancy to the issue of whether Defendants lacked an objectively reasonable basis in attempting to remove this matter to federal court.

As an initial matter, Defendants' arguments about fact pleading are without merit, as fact pleading does not even apply to pleadings filed in this Court. Rather, this Court is bound by the Federal Rules of Civil Procedure which require a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R.Civ.P. 8(a)(2). Moreover, developments in the case that occurred during discovery in state court *after* the remand to state court, such as deposition testimony

---

[7]Counsel had represented the building's owner previously in unrelated matters.

-8-

of expert witnesses, will not invalidate Plaintiffs' previous allegations or the Court's previous rulings that Defendants lacked an objectively reasonable basis for removal of the case at the time of removal.

On November 3, 2012, the Court previously assessed in a Report and Recommendation whether removal was improvident based on the facts as they were presented at the time of removal, and will not now re-examine the removal based on Defendants' suppositions and extrapolations derived from the discovery garnered in state court. Assuming *arguendo* Defendants are correct that there existed or has subsequently developed a conflict between the interests of the owner of the building and the tenants related to liability for the fire, it does not necessarily follow that Plaintiffs naming of Mr. Valencia as a defendant was fraudulent, or that he could not possibly also have been at fault for the fire, *as assessed at the time of removal* by *clear and convincing evidence*.

As the Court stated in considering the facts as alleged at the time of the remand motion:

> To support their argument for diversity jurisdiction and proper removal of this action, Defendants contend that Daniel Valencia, the resident Defendant, was fraudulently joined to defeat diversity jurisdiction. Docs. 1, 14. Plaintiffs move to remand, arguing that they have asserted a colorable theory of negligence against Defendant Valencia and Defendants have not shown by "clear and convincing evidence" that "no possibility exists that Plaintiffs can establish a cause of action against the resident Defendant." As explained by the Eleventh Circuit, "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). . . . In this case, Defendants argue that there is "no possibility" that Plaintiff can assert a colorable claim. "The defendant must make such a showing by clear and convincing evidence." *Henderson,* 454 F.3d at 1281 (citing *Parks v. N.Y. Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962)).
> \* \* \*
>
> [W]hen considering a motion to remand where a defendant has raised the issue of fraudulent joinder, "the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." [*Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997)]. "[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Florence*, 484 F.3d at 1299 (citations omitted); *Tran v. Waste Management, Inc.*, 290 F.Supp.2d 1286, 1292

(M.D. Fla. 2003). "The plaintiff need not have winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Tran*, 290 F.Supp.2d at 1292.

Doc. 24 at 6-8.

Defendants' argument that Valencia is not responsible – raised yet again, for at least the third time in the history of the case, and at this late date, two years after the removal – is nothing more than another challenge to the Court's previous decision that removal of the case was not objectively reasonable and remand was warranted. The Court already addressed the putative "fraudulent joinder" of Valencia and found that Plaintiffs stated a colorable claim for negligence against him because his asserted defense, that the landlord was responsible and he was not – based on his self-serving testimony that he handled all procedures properly and did nothing to contribute the fire –went to the weight and the credibility of witnesses.

Defendants basically argued that the claim against Valencia was not viable because Valencia testified to the effect that:

> [H]e was working as an employee of the co-defendant, CST, during the time relevant to the allegation in the Complaint; he followed the directions of his employer in providing safety instruction and information to his fellow employees and in following the company's shut-down procedures; the electrical systems and appliances had been shut down, turned off or unplugged when he and the other employees left the facility on the Friday, August 21, 2010, before the Sunday August 23, 2009 fire; none of the electrical appliances had previously arced or faulted; neither he nor CST ever worked on or modified the building's electrical systems; only the landlord - who also had a key to CST's tenant space - and/or its handyman electrician worked on the building electrical systems; the 754 building had a history of electrical problems and power failures that also involved the Plaintiffs' part of the same building; the landlord/owner and its handyman electrician were well aware of the ongoing electrical failures and problems, overheating electrical conduits, and tripping main circuit breakers in the building's electrical system before the alleged incident; and, the landlord/owner and its handyman electrician had been in the process of working on the building's electrical system during the two weeks leading up to alleged fire incident.
>
> Doc. 14 (citing Daniel Valencia Depo.). Applied to this case, whether Valencia properly did his job, followed safety procedure, and/or other of his actions contributed to the fire depends completely on the credibility of his testimony.

-10-

> As the Eighth Circuit explained seventy-five years ago in *Leonard v. St. Joseph Lead Company*:
>
>> [J]oinder is also fraudulent if the facts alleged in plaintiff's pleading with reference to the resident defendant are shown to be so clearly false as to demonstrate that no factual basis exists for an honest belief on the part of the plaintiff that there is a joint liability. If there is doubt as to whether, under the state law, a case of joint liability is stated, or if there is doubt whether the allegations with respect to the resident defendant are false, as when that question depends upon the credibility of witnesses and the weight of evidence, the joinder is not to be held fraudulent. Where the concurrent negligence of a nonresident and a resident defendant is the basis of the claim of joint liability, the case is ordinarily not removable.
>
> 75 F.2d 390, 394-95 (8th Cir. 1935) (emphasis added). Doubt as to the allegations with respect to the resident defendant exists "when that question depends upon" the weight of the evidence and the credibility of witnesses – in this case, the self-serving testimony of Defendant Valencia that he handled all procedures properly and did nothing to contribute the fire, which he also testified could be related to the landlord's actions/inaction. Plaintiff has stated a colorable claim for negligence against Defendant Valencia, a resident defendant, and as such the Court lacks diversity jurisdiction over the case.

Doc. 24 at 13-15. From the beginning of the removal process, Defendants CST and Valencia had argued that the landlord's action/inaction was responsible for the fire. Defendants assert nothing new at this juncture, but with the additional allegation that Plaintiffs' counsel "knew" of the landlord's liability.

The Court's has also previously rejected Defendants' nearly identical argument in the recent Report and Recommendation for appellate attorney's fees following the Eleventh Circuit's decision finding the removal improvident:

> Because the Eleventh Circuit has already determined that Defendants' removal was not objectively reasonable the Court need not consider Defendants' fourteen pages of extensive argument going to "what Plaintiffs have always had under their control to admit in this court" – "that the basis upon which Defendants removed this matter to federal court, that Valencia was a straw man and not a proper defendant, was objectively reasonable" – *based on certain experts' opinions expressed at their depositions*. Doc. 40 at 1-15. The Eleventh Circuit has affirmed Defendants' lack of

> objective reasonableness at the time they removed the case, which entitles Plaintiffs to fees. This Court is bound by that determination.

Doc. 42 at 3, fn. 2 (emphasis added); see also Doc. 43 (Order adopting Report and Recommendation).

The allegations made about Plaintiff's counsel and the prior representation of the landlord do come anywhere close to the level of clear and convincing evidence of fraud required by Rule 60(b)(3). *Kerwit Medical Prods., Inc. v. N & H Instruments, Inc*., 616 F.2d 833, 837 (5th Cir.1980) (citing "the well-settled rule that the mere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to 'fraud upon the court' for purposes of vacating a judgment under Rule 60(b)"). Moreover, Defendants have not shown that the issues they raise substantially interfered with their ability fully and fairly to prepare for, and proceed at, trial. *Tiller v. Baghdadv*, 294 F.3d 277, 280 (1st Cir. 2002). "To prevail, the movant must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case. For example, failure to disclose or produce evidence requested in discovery can constitute Rule 60(b)(3) misconduct." *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir.1983); *see Tyson v. Ozmint,* 246 F.R.D. 517 (D.S.C. 2007) (rejecting the plaintiff's Rule 60(b)(3) fraud argument which asked the court "to revisit a question of fact already presented and considered by the court" and "merely a request that the court 'change its mind' regarding its finding").

Defendants have not established that Plaintiffs withheld any information called for in discovery, particularly since the information they complain about relating to the corporate building owner and its principal were matters in the public record. *See General Universal Sys., Inc. v. Lee*, 379 F.3d 131, 156-57 (5th Cir. 2004) (noting that the fraudulent misconduct addressed in Rule 60(b)(3) includes "evidence that the opposing party withheld information called for by discovery or willfully committed perjury."). Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005).

The fact that, after remand, Plaintiffs amended their complaint to add the building's owner for claims arising from lack of a fire suppression system, or Defendants obtained discovery that arguably reduced the likelihood that Valenica was liable, does not impact the Court's earlier decision on whether the removal was proper at the time the case was removed. Rule 60(b)(3) concerns litigation-related fraud perpetrated in the course of litigation that "interferes with the process of adjudication." *Roger Edwards, LLC v. Fiddes & Son Ltd.*, 427 F.3d 129, 134 (1st Cir. 2005). In this case, the issues raised by Defendants developed subsequent to the remand of the case and did not "interfere with the process of adjudication" before this Court. Similarly, the issues raised by Defendants also do not rise to the level of "any other reason justifying relief" as set forth in the catch-all provision of Rule 60(b)(6).

Defendants alternatively argue that Plaintiffs and their counsel should be sanctioned based on the Court's inherent authority, citing the seminal case of *Chambers v. NASCO*, 501 U.S. 32, 44 (1991).

However, Defendants fail to argue any facts in support of this argument, and presumably rely on the prior portion of their brief discussing alleged fraud under Rule 60(b). *See* Doc. 53 at 21-23. The same is true of Defendants' analysis listing the Florida Rules of Professional Responsibility and citing caselaw for "abuse of process," neither of which applies the cited law to any particular facts, and can be denied on that basis alone. Doc. 53 at 23-25.

It is respectfully **RECOMMENDED** that Defendants' Rule 60 Motion for Relief from Judgment or Order be **DENIED**.

### 2. Execution on Fee Awards

Plaintiffs seek a writ of execution to enforce the fee awards previously entered by the Court. Under Federal Rule of Civil Procedure 69, "a money judgment is enforced by a writ of execution,

unless the court directs otherwise", and under Rule 70(d), "the clerk must issue a writ of execution or assistance" for "a party who obtains a judgment or order for possession." Fed.R.Civ.P. 69, 70. Although some courts, cited by Plaintiffs, have considered fee award orders "appealable final orders or judgments" under Federal Rule of Civil Procedure 54(a), and thus, governed by the procedures set forth in Rules 69 and 70 of the Federal Rules of Civil Procedure, the Eleventh Circuit has not definitely ruled on the issue. *See, e.g., Duggan's Funeral Serv. v. Duggan's Serra Mortuary, Inc.*, 176 F.3d 482, 1999 WL 274567 (9th Cir. 1999) (unpublished) (finding that a district court's award of costs is a "judgment" subject to enforcement by writ of execution under Rule 69); *Wheeler v. John Deere Co.,* 986 F.2d 413, 415 (10th Cir.1993) ("An award of costs, which partially reimburses the prevailing party for the out-of-pocket expenses of litigation, is obviously 'any money judgment.'"); *Schwarz & Schwarz of Virginia, L.L.C. v. Certain Underwriters at Lloyd's*, No. 6:07-cv-42, 2010 WL 2884702 (W.D. Va. June 25, 2010). *Cf In re Moore*, 88 B.R. 385, 386 (Bkrtcy. M.D. Fla. 1988) (holding that a writ of execution could not issue to enforce an order on attorney's fee award, only on a final judgment, which had not been entered on fee award).

Plaintiffs seek, in addition to the principal amount owed of $19,492.00, an award of all interest that has accrued to date, as well as an additional award of attorneys' fees associated with the preparation of the Motion for Writ of Execution for $687.50 based on 2.5 hours spent researching and writing the Motion, at the previously awarded rate of $275 per hour. Plaintiffs cite no authority for the award of interest or the award of an additional amount of fees for responding to the Motion for Relief from Judgment ($4,125) or for researching and filing of the Motion for Writ of Execution.

It is respectfully **RECOMMENDED** that the District Court enter a judgment in favor of Plaintiffs on the amount owed for fees of **$19,492.00** without any additional award for new fees or

interest. Plaintiffs will then be granted a writ of execution upon application to the Clerk in due course under the Federal Rules of Civil Procedure.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 10, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy